*In re* MYRON'S ESTATE.

1. ESTATES OF DECEDENTS — EXECUTORS AND ADMINISTRATORS — CLAIMS—PARENT AND CHILD.

    For services rendered by a son in caring for his mother and managing decedent's farm, after his father's death, no recovery can be had from his father's estate, unless deceased agreed to pay for such services.

2. SAME—EVIDENCE.

    An express contract to pay for the same is not inferable because claimant returned home, lived with his father and performed services for him for several years before his death, or because claimant continued to perform services, and make improvements on the farm after the father's death.

Error to Kalamazoo; Knappen, J. Submitted February 20, 1911. (Docket No. 172.) Decided March 13, 1911.

Frank Myron presented a claim against the estate of John Myron, deceased, which was allowed by the commissioners on claims. On appeal to the circuit court, judgment was rendered for claimant. Defendant brings error. Reversed.

*Jackson & Fitzgerald*, for appellant.

*Frost & Farrell*, for appellee.

HOOKER, J. The claimant is a son of the intestate. At 22 years of age he left his father's home and worked for others in the city of Kalamazoo for about three months, when he was taken sick. He then returned to his father's home, and lived there until his father died about three years later. The family consisted of his father, mother, and the claimant, and he and his father both worked on the farm. After his father's death claimant remained there, practically taking charge of and running the place until his mother died. The mother died in June, 1909, having been blind and helpless after 1903, and confined to her bed. Claimant provided and cared for her, and managed, kept up, and improved the place; his brother and sister acquiescing and in no way contributing to the burden. After the death of the mother, and in 1910, a grandson of the intestate, being the son of intestate's daughter, who died some years before, applied for administration of his grandfather's estate, and one Andrew H. Campbell was appointed administrator and qualified. Claimant turned over to him personal property and money which had accumulated since his father's death, said to have amounted to about $1,000. He then presented a claim for 216 months' service performed on the homstead, at $12.50 per month, amounting to $2,700, less a credit for cash of $770, leaving a balance of $1,930, and this was allowed by commissioners. The administrator declined to appeal, and the appeal to the circuit court was taken by the grandson. A verdict for claimant for $755.62 was returned, judgment followed, and a writ of error has issued on behalf of the estate.

We are impressed that this is a hard case upon the claimant, and are confirmed in this impression by the evident unwillingness of his brother to deny his claim. We have scanned the evidence closely to ascertain whether the evidence warranted the submission of the case to the

jury. The time covered by the claimant's residence upon the farm may be divided into two periods, the first ending at the death of his father; the second covering the time between the death of his father and that of his mother. The bill of particulars mentions a period of 216 months, which is exactly the time that his mother lived after the death of his father. In his testimony claimant said that the claim filed was "for his services from the time his father died until his mother died." It is obvious that at the time his father died the title to his estate passed to his heirs, subject to his debts and contract obligations, and that services rendered thereafter in working the farm or caring for the widow would not be claims against the estate of the father, unless rendered in performance of a valid pre-existing contract to do these things. We find no evidence that the father made such a contract, nor can one be inferred from the fact that claimant returned and lived and worked with his father for about three years before he died. It is also clear that claimant's subsequent conduct cannot be used as evidence to establish a contract between himself and his father. We have critically examined the cases relied on by claimant's counsel, and are constrained to say that none of them will justify the conclusion that such a contract was made. A verdict for defendant should have been directed.

The judgment is reversed, and a new trial ordered.

BIRD, MOORE, McALVAY, and BROOKE, JJ., concurred.